**William B. GAYNOR, M.D.**

v.

**EPHRATA COMMUNITY HOSPITAL, Ephrata Community Hospital Insurance Committee, and Pension Plan for Employees of Ephrata Community Hospital.**

Civ. A. No. 87–5529.

United States District Court, E.D. Pennsylvania.

June 23, 1988.

Michael D. Bull, David P. Miller, Blaking-er, Byler, Thomas & Chillas, Samuel A. Goodley, Lancaster, Pa., for plaintiff.

Christopher Mattson, Christopher A. Stump, Barley, Snyder, Cooper and Barber, Lancaster, Pa., for defendants.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Plaintiff has sued defendants under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982), for breach of fiduciary duties and for benefits allegedly due under the terms of a defined benefit pension plan (the plan) administered by the defendant insurance committee. The issues raised by defendants' motion for summary judgment center on two documents executed at different times on June 16, 1977. The first is an employment contract (the 1977 contract) between the plaintiff and defendant Ephrata Community Hospital covering the three-year period ending July 1, 1980. The second is a waiver and indemnity agreement (the 1977 waiver) executed by the plaintiff later the same day.

The employment contract contains the following provisions:

(2) ...

The Physician shall not be included in the Hospital's pension, hospitalization or other employee benefits, in effect during the term of this Agreement, to which the Hospital employees are entitled or subsequently become entitled.

.    .    .    .    .

(13) This document contains the entire agreement of the parties....

The waiver and indemnity agreement provides:

WHEREAS, Gaynor has not participated in the Hospital's pension plan, because of a series of private employment agreements between Gaynor and the Hospital dating from 1959; and

WHEREAS Gaynor has instructed Hospital, and plans in the future to instruct Hospital, to make the maximum contributions to his tax sheltered annuity permitted under Section 415 of the Internal Revenue Code; and

WHEREAS participation in the pension plan of the Hospital by Gaynor will cause the deductible contributions to the tax sheltered annuity to be reduced under Section 415 of the Internal Revenue Code.

NOW, THEREFORE, intending to be legally bound, Gaynor hereby waives any right to participate in any employee retirement plan of the Hospital as may have heretofore existed, exist now or in the future, and hereby waives and releases any right to claim any benefit under any such plan of the Hospital on account of services performed or to be performed for the Hospital.

.    .    .    .    .

Gaynor hereby agrees to indemnify and hold harmless the Hospital, its successors and assigns, on account of any claim for any liability of any kind whatsoever arising out of the exclusion of Gaynor from participation in the past, present or future employee retirement plan maintained by the Hospital.

Because I hold that these documents have a prospective effect that is different than the effect they have on benefits that may have accrued prior to their execution, the time periods separated by July 1, 1977 must be discussed separately.

### Post–1977 Benefits

■ The plaintiff attempts to avoid the clear import of the contractual language waiving his right to participate in the plan

during the term of the agreement by raising a claim of misrepresentation on the part of the defendants. The plaintiff claims that Leo G. Schmidt, the Hospital Administrator, told him that the plaintiff could not participate in the plan and also receive the tax-deferral benefits associated with annuity contracts purchased on his behalf pursuant to 26 U.S.C. § 403(b). The plaintiff also alleges that both the 1977 waiver and an identical waiver signed by him in 1980 (the 1980 waiver) contained several misrepresentations—namely, that the plaintiff had instructed and planned in the future to instruct the hospital to make the maximum allowable payments to purchase the annuity contracts on his behalf, and that participation by the plaintiff in the plan would cause the deductible amount of payments used to purchase the contracts to be reduced.

With respect to the period covered by the 1977 contract—that is, 1977 to 1980—plaintiff's arguments are easily refuted. Both the alleged oral misrepresentation of Leo Schmidt and the alleged written misrepresentations contained in the 1977 and 1980 waivers were made *after* the 1977 contract was signed. *See* Plaintiff's Brief in Opposition at 203. The plaintiff, therefore, could not have relied upon these representations in agreeing to be bound by the 1977 contract. The plaintiff, however, makes the additional argument that the defendants had an affirmative duty to initiate a discussion—or to suggest that the parties negotiate—with respect to the nonparticipation provision prior to allowing the plaintiff to sign the contract. During this discussion, at least as the plaintiff envisions it, the defendants would be required to make a "complete disclosure of the rights involved and the impact of the entire contract." Plaintiff's Brief in Opposition at 18.

Although an ERISA fiduciary has a duty "to inform participants and beneficiaries of their rights," *Central States S.E. and S.W. Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 580, 105 S.Ct. 2833, 2845, 86 L.Ed.2d 447 (1985), I have found no cases, and the plaintiff has cited none, establishing a general duty on the part of employers who are also ERISA trustees to give special emphasis to the issue of pension plan participation when bargaining with an employee over the terms of employment. Whether an employee will be a participant in the company's pension plan is a proper subject of bargaining. *See Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."). Although in certain circumstances an employer/trustee may have a fiduciary duty to apprise an employee of all the ramifications of deciding not to participate in a pension plan, where the employee had the opportunity to consult with counsel and actually negotiated over and changed at least one major provision in the contract, there is no such duty.

The only remaining argument made by the plaintiff with respect to the 1977 contract is that the provision excluding him from the pension plan might not have been in the first draft of the contract and may have appeared only in the second draft. The plaintiff read the first draft carefully but only checked the second to make sure that a change with respect to how his salary was to be paid had been properly made. In his affidavit of March 18, 1988, the plaintiff stated, "*I think* that if the language had been included in this first draft of the contract excluding me from the pension plan and health care benefits, *I would have noticed the same* since the issue had never been previously discussed" (emphasis added). This statement is hardly unequivocal. Moreover, it is contradicted by plaintiff's testimony that he agreed in 1977 to be excluded from the pension plan because he "didn't think it was important." Deposition of William B. Gaynor, M.D. at 18–20. In light of the clear contractual language, plaintiff's negligence in failing to read the second draft of the contract, and plaintiff's contradictory testimony, plaintiff's statement that the pension plan provision may not have been in the first draft of the 1977 contract does not create a genuine issue of

material fact sufficient to withstand summary judgment.

The plaintiff also signed employment contracts on June 17, 1980 (the 1980 contract), July 1, 1983 (the 1983 contract), and January 1, 1986 (the 1986 contract). The 1980 contract contains the same provision as the 1977 contract with respect to plaintiff's nonparticipation in the plan. In addition, the plaintiff signed a waiver and indemnity agreement on June 17, 1980 (the 1980 waiver) in substantially the same form as the 1977 waiver. In 1983 and 1986, the plaintiff did not sign a separate waiver and indemnity agreement but rather, language similar to that found in the 1977 and 1980 waivers was incorporated into the 1983 and 1986 contracts. The plaintiff argues that the nonparticipation provisions in the 1980, 1983 and 1986 contracts are invalid because of the continuing effect of the oral misrepresentation made in 1977 and because the plaintiff assumed he could not participate in the plan in light of the fact that he had signed the 1977 waiver.

No evidence has been submitted tending to support plaintiff's assertion that he assumed he could not participate in the plan because he had signed the 1977 waiver. Even if such evidence has been presented, there is no evidence that the defendants caused or induced plaintiff's erroneous assumption with respect to the legal effect of the 1977 waiver on subsequent contracts. Nor is there any evidence that the defendants had reason to know of plaintiff's mistake. The Restatement (Second) of Contracts § 153 states that a unilateral mistake renders a contract voidable, or gives the mistaken party a right to appropriate restitution, *see* comment e and § 158(1), only if "the other party had reason to know of the mistake or his fault caused the mistake." The duties established by ERISA, at least during negotiations with respect to an employee's participant status, do not require a contrary rule. With the exception of the minimum participation standards enumerated in 29 U.S.C. § 1052, an employer is free to define the universe of participants in any reasonable manner. *See Shaw,* 463 U.S. at 91, 103 S.Ct. at 2897. Plaintiff's mistaken belief, therefore, does not entitle him to relief.

■ Plaintiff's argument with respect to the continuing effect of the oral misrepresentation made in 1977 is also unavailing. His claim is similar to the § 510 claim raised in *Saporito v. Combustion Eng'g, Inc.,* 843 F.2d 666 (3d Cir.1988). In essence, plaintiff argues that "but for" the defendants' misrepresentations, the plaintiff would have been a plan participant and therefore is entitled to damages.[1] Although the plaintiff does not specifically reference § 510, 29 U.S.C. § 1140, it is the most obvious source for the right he is claiming because it "prevents employers from interfering with rights to which employees may become entitled under ERISA." *Saporito,* 843 F.2d at 669. Plaintiff, of course, might encounter considerable difficulty in establishing that "but for" defendants' misrepresentations he would have successfully bargained for the right to participate in the plan. More important at this stage, however, is that "the essential element of proof under § 510 is specific intent to engage in proscribed activity." *Gavalik v. Continental Can Co.,* 812 F.2d 834, 851 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 495, 98 L.Ed. 2d 492 (1987). Plaintiff has failed to allege that the misrepresentation made by the defendants was purposeful. Unlike the *Saporito* case, there have been no allegations of "trickery". Finally, in order to establish a § 510 violation, an employee must demonstrate that prohibited employer conduct was taken *for the purpose of interfering* with any right protected by ERISA. *Gavalik,* 812 F.2d at 852. The plaintiff, however, has submitted no evidence that would support an inference that the defendants

---

1. The Court of Appeals for the Ninth Circuit has held that a plaintiff claiming "but for" participant status does not fall within the jurisdictional grant of ERISA, 29 U.S.C. § 1132(a)(1)(B), (e)(1). *Freeman v. Jacques Orthopaedic and* *Joint Implant Surgery Medical Group,* 721 F.2d 654 (9th Cir.1983). I am bound, however, by the Court of Appeals for the Third Circuit's decision in *Saporito.*

made the alleged oral misrepresentation *in 1977* with the purpose of interfering with plaintiff's right to bargain for inclusion in the plan *in 1980.*

Rather than invoking § 510, the plaintiff brought his claim under 29 U.S.C. §§ 1104, 1109(a) & 1132(a)(2) for breach of fiduciary duties. *See Russell v. Massachusetts Mut. Life Ins. Co.,* 473 U.S. 134, 139–40, 105 S.Ct. 3085, 3088–89, 87 L.Ed.2d 96 (1985). The Court of Appeals for the Third Circuit held in *Saporito, supra,* that "but for" participant status gives rise to specific duties on the part of the plan trustees, *e.g.,* the duty not to discriminate, under § 1140. With respect to plaintiff's claim for breach of fiduciary duty, however, a strong argument could be made that "but for" participant status is insufficient to give rise to fiduciary duties on the part of the plan trustees *vis a vis* the but for participant under § 1104. The fiduciary duties enumerated in § 1104, that is, may be owed only to actual participants. *Saporito,* therefore, may be distinguishable because it involved a claim brought under section 510 of the Act. If the plaintiff, as a "but for" participant, has not stated a valid claim under § 1104, I lack jurisdiction to adjudicate it. *See Saporito,* at 672 n. 7. However, assuming I have jurisdiction, the claim nonetheless fails. Analysis of the merits of plaintiff's claim for post–1980 benefits for breach of fiduciary duty requires an examination of the extent of the defendants' fiduciary duty towards the plaintiff in the bargaining context.

There is no particular provision of ERISA that specifies what kind of fiduciary duty, if any, is owed by the defendants to the plaintiff in this context. This court, guided by the policies underlying ERISA, is charged with developing rules of law to govern those aspects of the employee benefit field not specifically covered by any particular statutory provision. *See Carl Colteryahn Dairy, Inc. v. Western Pa. Teamsters and Employers Pension Fund,* 847 F.2d 113, 115 (3d Cir.1988); *In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128, 1131 (E.D.Pa.1977) (citing 120 Cong.Rec. 515751 (daily ed. August 22, 1974)), *aff'd,* 582 F.2d 1273, 1275 (3d Cir.1978). In exer-

cising this power, the courts are directed by ERISA to draw from the common law of trusts and are also permitted to look to other applicable state law principles not inconsistent with ERISA. *Central States,* 472 U.S. at 570 n. 10, 105 S.Ct. at 3090 n. 10; *Simmons v. Diamond Shamrock Chemicals Co.,* 658 F.Supp. 1053, 1056 (E.D.Mo.1987), *aff'd,* 844 F.2d 517 (8th Cir. 1988).

■ Ordinarily, a trustee owes a duty of loyalty to beneficiaries to act solely in their interest. *See* Restatement (Second) of Trusts § 170(1) (1957). In enacting ERISA, Congress required that ERISA fiduciaries comport with a similar standard of conduct. *See* 29 U.S.C. § 1104(a)(1). However,

"in applying the common law of trusts under ERISA courts must be cognizant of the features that distinguish the ERISA arrangements from the paradigmatic common law situation.... ERISA ... permit[s] the trust form to be used by employees for the benefit of their employees even though—since they deal with each other at arms' length, like buyers and sellers of any other commodity— there will sometimes be conflicts of interest between those two groups. This difference does not prevent the trust form from being used, but it does require that trust principles not be applied mechanically in the new context."

*Bruch v. Firestone Tire and Rubber Co.,* 828 F.2d 134, 143 (3d Cir.1987), cert. granted, — U.S. ——, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988). While the plaintiff contends that the defendant had a fiduciary duty to act loyally towards him, the plaintiff also recognizes that "the Hospital was, in effect, wearing two hats." Plaintiff's Brief in Opposition at 17. When a plan is controlled entirely by an employer, the employer necessarily acts toward participants in a dual capacity. On one hand, it acts as a trustee with respect to pension benefits and the rights of participants under the plan. On the other hand, it acts as an employer possessing the right to bargain over the terms of employment with its employee. The duty of the employer, as trust-

ee, to act solely in the interest of participants with respect to administering the plan is absolute. Nonetheless, this duty does not prohibit the employer from bargaining with its employee with respect to the employee's right to prospective participation in the plan. Statements made in the latter context are not subject to the same level of scrutiny as statements made in the former. Whether an unintentional misstatement made by an employer to an employee constitutes a breach of fiduciary duty under ERISA, therefore, depends on the totality of the facts and circumstances, including the speaker, the nature of the statement, and the context within which the statement was made.

▋ Having examined the relevant circumstances in the present case, there are five factors that weigh against finding that the facts alleged by the plaintiff, at least with respect to post–1980 benefits, constitute a breach of fiduciary duty. First, both when the alleged misrepresentation was made and when the 1980 and subsequent contracts were signed, the plaintiff was not a participant in the plan by virtue of the language in the 1977 contract waiving his right to prospective participation. Assuming that some duty of care is owed to potential participants, that duty is necessarily less strict than the duty owed to actual participants, especially those with vested benefits. Second, the alleged misrepresentation was made by Leo G. Schmidt, the Hospital Administrator on behalf of the members of the finance committee. *See* Answers to Defendant's Interrogatory 14 (a, b). Mr. Schmidt was not at the time, nor had he ever been, the administrator of the pension plan. *See* 29 U.S.C. § 1102(a) (providing for the appointment of "named fiduciaries" to manage pension plans); Answers to Plaintiff's Interrogatories at 3 (listing all plan administrators from 1966 through 1987). Nor does the plaintiff represent that Mr. Schmidt made the alleged misrepresentation on behalf of the plan administrator. Although the hospital administrator may have owed some duty to a potential pension plan participant such as Dr. Gaynor, the plaintiff had much less reason to rely on Mr. Schmidt's repre-

sentations concerning pension plan participation than he would have to rely on representations made by the plan administrator. *See* 29 U.S.C. § 1002(21)(A); *Trenton v. Scott Paper Co.*, 832 F.2d 806, 809 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).

Third, the alleged misrepresentation did not concern the terms of the plan but rather the tax effect of plaintiff's participation in the plan on contributions made to his 403(b) annuity. While the tax consequences of plan participation may have been a factor in plaintiff's decision not to participate, defendants' duty not to misrepresent the tax laws is less compelling than their duty to present accurately the terms of the pension plan. In this case, there are only allegations that the defendant was derelict with respect to the former, and no allegations that the defendant transgressed the latter duty. Fourth, the alleged misrepresentation was made in the course of bargaining over the terms of employment. At the time the alleged misrepresentation was made, Mr. Schmidt was acting on behalf of the Pathology Contract Committee which had been organized by the Hospital's Board of Directors to review Dr. Gaynor's employment contract. It is in the bargaining context that the adversarial nature of the relationship between employer and employee is most acute. The fact that employer and employee have opposing interests in this context should have been apparent to the plaintiff, and the fiduciary duty of the defendant Hospital, although existent, is less imperative in this context than in any other.

Finally, although plaintiff alleges that the misrepresentation first made in 1977 had a continuing effect on his willingness to waive his right to participate in the pension plan when entering into employment contracts in 1980, 1983 and 1986, the effect of the misrepresentation 3, 6 and 9 years later is attenuated at best. Plaintiff had more than an adequate opportunity to consult with an accountant or with tax counsel concerning the tax effect of pension plan participation on contributions made to his 403(b) annuity. In light of this

opportunity, plaintiff's reliance on the representation of Mr. Schmidt as to the nature of these tax consequences was unreasonable. Under ERISA, I am authorized to develop federal common law rules concerning employee pension plans. *Carl Colteryahn,* at 115. Taking this mandate seriously, I hold that under the facts and circumstances of this case—and giving weight to the five factors just enumerated—the alleged misrepresentation made by Mr. Schmidt does not constitute a breach of fiduciary duty under ERISA. Therefore, judgment must be entered in favor of the defendants as a matter of law with respect to plaintiff's claim for pension benefits accruing after 1977.

*Pre–1977 Benefits*

██ The defendants have also moved for summary judgment with respect to plaintiff's claim for pension benefits that allegedly accrued between 1966 and 1977. The defendants concede that if plaintiff was a participant in the plan between the years 1966 and 1977, his right to benefits for those years would be "nonforfeitable" under ERISA. *See* 29 U.S.C. § 1053(a). The defendants, however, make several arguments in support of their motion.

The defendants argue, first, that the plaintiff was not a participant in the plan and therefore is not entitled to benefits. Whether or not the plaintiff was a plan participant depends on whether he was an "employee" paid on a "monthly salaried basis." This determination is factual in nature and will be made at trial. The defendants also argue that I have no jurisdiction over this matter because the plaintiff is not a participant. Again, whether or not the plaintiff was a plan participant is a factual issue that will be determined at trial. Moreover, plaintiff's allegations that he was a participant are sufficient to confer subject matter jurisdiction on this court. *Bruch,* 828 F.2d at 152.

Defendants make the additional argument that the plaintiff waived any rights he may have had to pension benefits for the years 1966 to 1977 by executing the 1977 and 1980 waivers and the 1983 and 1986 contracts. The defendants seek to avoid the nonforfeitability provisions of 29 U.S.C. § 1053 by distinguishing between the nonforfeitability of vested benefits and the forfeitability of pension plan participation. Defendants' argument, however, that past participation in a pension plan is forfeitable even though vested benefits are not amounts to nothing more than a verbal smokescreen. The argument proceeds as follows: 1) the defendant Hospital never made any contributions to the plan on the plaintiff's behalf, 2) the plaintiff, therefore, did not have any vested benefits, 3) consequently, the plaintiff could not have forfeited his right to vested benefits but rather forfeited his right to past participation in the plan, and 4) § 1053 prohibits the waiver of vested benefits, not participation.

Defendant's argument, however, is not responsive to the claim made by the plaintiff. Plaintiff's claim is that he was a participant in the plan and as a result is entitled to certain vested benefits that are nonforfeitable by virtue of § 1053. *See Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed. 2d 402 (1981). The defendants cannot thwart this claim merely because they failed to fund the plan in a manner sufficient to support plaintiff's claim for benefits. To the contrary, the defendants have consistently maintained that if the plaintiff is entitled to benefits which they failed to fund adequately, they will be subject to "a major penalty assessed by the guarantee fund against the pension plan for under funding [sic]" the plan. Transcript of March 31, 1988 hearing at 42. The defendants have cited no case that supports the distinction they make between vested benefits and participation. Moreover, the only case cited by the defendants for the proposition that participation in a pension plan may be waived is an unpublished district court case from the Northern District of California, vacated by the Court of Appeals for the Ninth Circuit for lack of jurisdiction, with no indication in the opinion of the Court of Appeals that the waiver was of *past* participation.

The defendants not only contend that the plaintiff expressly waived his right to par-

ticipate in the pension plan between 1966 and 1977 but also that he impliedly waived the same right. The mainstay of their argument is that by signing the 1977 waiver, the plaintiff misled the defendants into thinking he would not attempt to claim benefits for those years. The nonforfeitability provisions of 29 U.S.C. § 1053, however, clearly preclude such an implied waiver of past participation rights in a pension plan. The policies behind ERISA would be ill-served if such an implication were permitted. Moreover, the prejudice claimed to have been suffered by the defendants, if it exists at all, pales in comparison with the prejudice that would result to the plaintiff if his participation rights could be so easily divested. Finally, defendants' contention that they might have refused to continue plaintiff's employment if they had known he intended on pursuing his claim for pension benefits, if not actionable under 29 U.S.C. § 1140, is certainly not cognizable by this court as supporting the defendants implied waiver argument.

■ The defendants also argue that the plaintiff validly "released" his claims through an accord and satisfaction of the disputed issue as to whether the plaintiff was a plan participant. On its face, this is the most substantial of the defendants' arguments. It is not necessary to decide in this case whether the courts should countenance the settlement of claims for vested benefits, where participation is undisputed, for consideration less than that given up. *See Bruchac v. Universal Cab Co.*, 580 F.Supp. 295, 304 (N.D. Ohio 1984) (the provision of severance pay in exchange for a waiver of rights is insufficient to defeat the nonforfeiture provisions of ERISA). Where plan participation is in issue, however, it is possible that the courts should encourage employers and employees to settle their disputes through an accord and satisfaction. I assume, therefore, for the purposes of deciding this motion, that an employee can validly release his claim to past pension benefits where the fact of the employee's participation is disputed in good faith by the employer and the release meets certain strict standards.

Under the law of Pennsylvania, the elements of a valid accord and satisfaction are "(1) a disputed debt, (2) a clear and unequivocal offer of payment in full satisfaction of the debt, and (3) acceptance and retention of payment by the offeree." *T.J. Trauner Associates, Inc. v. Cooper–Benton, Inc.*, 820 F.2d 643, 645 (3d Cir.1987). The payment element underlines the fact that a valid accord and satisfaction requires consideration. *Id.* at 646. In the present case, the 1977 waiver was signed after the 1977 contract and therefore lacked consideration. In addition, there is a material issue of fact as to whether the parties were actually actively disputing plaintiff's participation in the plan and whether the defendants made a clear and unequivocal offer of payment in full satisfaction of the plaintiff's claim. More importantly, however, I hold that the alleged release of plaintiff's right to past participation in the pension plan is not sufficiently clear, and is not sufficiently accompanied by a full disclosure of the rights given up by both parties, to constitute a valid accord and satisfaction under ERISA.[2]

■ In enacting ERISA, Congress sought to protect the "well being and security of ... employees and their dependents ... affected by these [pension] plans," to ensure that "disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans," and to prevent "employees with long years of employment ... [from] losing anticipated retirement benefits." 29 U.S.C. § 1001(a). This history together with the nonforfeiture provisions of 29 U.S.C. § 1053 evidence a congressional intent to protect employees from improvidently bargaining away participation

---

**2.** Because I find that the waiver, both on its face and in conjunction with the evidence submitted by the parties to this point, does not constitute a valid release under ERISA, there is no need to decide at this time whether a new employment contract can ever be sufficient consideration to support such a release. Moreover, the extent to which a court should scrutinize the consideration given for such a release, and the appropriate standard of scrutiny to be applied, are questions that will be decided only if and when it becomes necessary.

rights. *See Senco of Florida, Inc. v. Clark,* 473 F.Supp. 902, 908 (M.D.Fla.1979) (intent of Congress to protect employees from bargaining away benefits provided by plans qualified under ERISA). The validity of a release under ERISA depends on the entirety of the facts and circumstances surrounding its execution. However, in making that determination the following factors would normally be taken into account: (1) whether the release is in writing, (2) whether the release is clear and specific, (3) whether there was a full and accurate disclosure of the rights being released, (4) whether the employee was represented by counsel, (5) whether there was a real opportunity for negotiation, and (6) the adequacy of the consideration given for the release. Cf. *Cirillo v. Arco Chemical Co.,* No. 87–4026 (E.D.Pa. December 10, 1987) [available on WESTLAW, 1987 WL27459] (LEXIS, Genfed Library, Dist. file) (release in ADEA context).

As I stated in footnote 2, *supra,* I will assume for the purpose of deciding this motion that the consideration given in exchange for the release was adequate. Nonetheless, the waiver is insufficient to release plaintiff's claim, at least on its face, on several grounds: first, it is hardly a model of clarity; second, it does not contain a full and accurate disclosure of the rights being released—in fact it contains several misrepresentations; third, the plaintiff was not represented by counsel; and fourth, it does not appear that there was a *real* opportunity for negotiation. Under these circumstances, the policies behind ERISA preclude a finding that the waiver signed by the plaintiff effects a valid release of his claim for pension benefits. I will permit the defendants to attempt to show at trial, however, that under all the facts and circumstances, a full disclosure of plaintiff's rights had been made, that the plaintiff had a real opportunity for negotiation and that the plaintiff knowingly and voluntarily waived his right to claim participant status —and therefore benefits—for the years 1966 to 1977. *See Edwards v. Wilkes-Barre Publishing Co. Pension Trust,* 757 F.2d 52, 54 n. 3 (3d Cir.1985).

■ The defendants also argue that plaintiff's claim is foreclosed by the doctrine of equitable estoppel. Their argument is that the plaintiff, by signing the waivers and contracts drafted by the defendants, represented that he would not claim to be a plan participant in the future, to the detriment of the defendants. The defendants, however, have cited no case, and I have found none, that apply the doctrine of equitable estoppel against an employee claiming pension benefits under ERISA. Even against an employer, "[p]rinciples of equitable estoppel are not to be applied lightly in cases involving pension benefits." *Higgins v. Carpenters Health & Welfare Fund,* 524 F.Supp. 601, 607 (E.D.Pa.1981); *see also Piech v. Midvale–Heppenstall Co.,* 594 F.Supp. 290, 299 (E.D.Pa.1984), *aff'd,* 770 F.2d 1070, 72, 74 (3d Cir.1985); *but see Rosen v. Hotel and Restaurant Employees Union, Local 274,* 637 F.2d 592, 598 (3d Cir.) (estoppel against the pension fund), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). In light of the policy behind ERISA to safeguard employees' rights to pension benefits, in light of the fact that the waivers themselves are invalid, and in light of the minimal prejudice, if any, suffered by the defendants, I decline to find plaintiff's claim barred by the doctrine of equitable estoppel.

■ Finally, the defendants contend that the plaintiff's claim for benefits is barred by the doctrine of laches. Ordinarily, a cause of action for benefits under ERISA does not accrue until the claimant makes an application for benefits and that application is denied. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598–99 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 361 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7th Cir. 1978). The defendants correctly point out that a party asserting the defense of laches must show both an unjustified delay in

bringing the action and prejudice resulting from the delay. *Class of Two Hundred Administrative Faculty Members v. Scanlon*, 502 Pa. 275, 466 A.2d 103, 105 (1983). Because an action for benefits accrues when an application for benefits is denied, the plaintiff did not unjustifiably delay in filing his claim for pre–1977 benefits.[3] *See Edwards*, 757 F.2d at 54 n. 3. Moreover, the prejudice suffered by the defendants is not so great as to overcome the policy of ERISA favoring recovery of benefits that have been earned through long years of service. Defendants motion for summary judgment with respect to plaintiff's claim for benefits for the years 1966 to 1977, therefore, must be denied.

The plaintiff has agreed to withdraw his claim for relief under 29 U.S.C. § 1025.

An appropriate order follows.

### ORDER

AND NOW, this 23 day of June, 1988, upon consideration of defendants' Motion for Summary Judgment, plaintiff's response thereto, and the memoranda of law submitted in support thereof, IT IS ORDERED that the motion is granted in part and denied in part as follows:

1. Summary Judgment is GRANTED in favor of the defendants with respect to plaintiff's claim for pension benefits for the time period after and including July 1, 1977.

2. Summary Judgment is GRANTED in favor of the defendants on Count II of plaintiff's complaint.

3. In all other respects, defendants' motion for summary judgment is DENIED.

---

[3]. Plaintiff's claim for pre–1977 benefits does not depend in the same way his claim for post–1977 benefits does on proving a breach of fiduciary duty on the part of the defendants. Therefore, even though the statute of limitation contained in 29 U.S.C. § 1113 may apply to plaintiff's claim for post–1977 benefits (and I make no determination whether it does), it does not apply to his claim for pre–1977 benefits.