**CITIZENS FOR A BETTER ENVIRONMENT, United Neighborhood Organization of Southeast Chicago and Mary Ellen Montes, Plaintiffs,**

v.

**Lee M. THOMAS, Administrator of the Environmental Protection Agency, Defendant,**

and

**Acme Steel Company and LTV Steel Company, Inc., Intervenors.**

No. 85 C 8000.

United States District Court, N.D. Illinois, E.D.

Jan. 10, 1989.

Steven A. Salzman, Schmidt & Salzman, Ltd., Chicago, Ill., for plaintiffs.

James T. Harrington, Ross & Hardies, Chicago, Ill., for Acme Steel Co. and LTV Steel Co.

Linda A. Wawzenski, Andrew Gordon, U.S. E.P.A., Jean A. Kingrey, Sp. Litiga-

tion Counsel, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Section 21 of the Toxic Substances Control Act ("TSCA" or the "Act"), 15 U.S.C. § 2620, permits citizens to petition the Administrator of the Environmental Protection Agency ("EPA") to initiate rulemaking under various provisions of TSCA. If the EPA denies a citizen petition or fails to act on it within ninety days the citizen may present his petition to an United States District Court for *de novo* consideration. 15 U.S.C. § 2620(b)(4).

This case arises out of a petition filed by plaintiffs, Citizens for a Better Environment ("CBE"), requesting that the EPA initiate rulemaking pursuant to 15 U.S.C. § 2603, which provides for the promulgation of rules requiring testing of certain chemical substances and mixtures where there may be an unreasonable risk of injury to health and the environment and where there is insufficient data to determine if such a risk exists. Specifically, the CBE asked the EPA to compel business entities in southeast Chicago whose business includes the production of, *inter alia,* coke oven emissions to test such emissions. The EPA denied the petition explaining that:

> "The toxicological properties of these ten substances in one mixture (coke oven emissions) are already well documented and therefore regulatory decisions concerning them can be made without requiring further testing" and "no standards exist at present for the testing of multiple chemicals for their toxicological interactions and the state of the art in this area is insufficient for prescribing how the testing which the petitioners' request should be conducted, or for assuring that the test data be reliable and adequate."

50 F.R. 30518. As a result of this denial plaintiffs commenced this action in this court under Section 2620.

On April 11, 1988 this court permitted Acme Steel Company ("Acme") and LTV Steel Company ("LTV") to intervene pursuant to Fed.R.Civ.P. 24(a)(2) in order to litigate the constitutionality of 15 U.S.C. § 2620(b)(4). This court found at that time that Acme and LTV were claiming a direct and substantial interest in the proceeding which was subject to impairment because the testing which plaintiffs seek is expensive and invasive and would certainly be required of them as southeast Chicago steel producers who use coke ovens. While any rules which may result from these proceedings could be tested under judicial review procedure (Section 2618), the constitutionality of Section 21 could not be.

Accordingly, the court now has before it for decision the constitutionality of Section 2620(b)(4).

### Standing

■ Plaintiffs have raised the issue of intervenor standing to litigate the constitutionality of Section 2620(b)(4). However this court has previously ruled under Fed. R.Civ.P. 24(a)(2) that Acme and LTV may intervene in these proceedings for precisely the purpose which plaintiffs seek to deny: to argue the constitutionality of Section 2620(b)(4). The issue is somewhat moot anyway insofar as the EPA has itself questioned the court's jurisdiction to grant the relief prayed for by plaintiff and has taken an extremely strained and attenuated interpretation of Section 2620(b)(4) in its brief on the issue of constitutionality. (Defendant's Response to Intervenor's brief, p. 1). Accordingly, the court will consider the constitutionality of Section 2620(b)(4).

### TSCA

Congress enacted the TSCA in 1976 in an effort to provide a comprehensive framework for regulating toxic chemicals. In particular, Congress sought a regulatory approach that would prevent damage to human health and the environment rather than simply to respond to such damage after it occurred. Section 2603 requires that the EPA enact rules and to provide for testing of any chemicals or substances if it

finds that those substances "may present an unreasonable risk of injury to health or environment" and that "there are insufficient data and experience" upon which to predict their effect (Section 2603(a)(1)(A)). Congress also provided for citizen participation in the administration and enforcement of the Act. Section 2620 authorizes the citizens to petition the EPA for the initiation of rulemaking proceedings under several sections, including Section 2603. The agency must either grant or deny the petition within ninety days of its filing. Section 2620(b)(3). If it grants a petition the EPA must promptly commence rulemaking proceedings under the appropriate section. If the EPA denies the petition it must publish its reasons for the denial in the Federal Register. Where a petition is denied or where the EPA fails to respond to the petition within the ninety day period, the petitioner may seek *de novo* review of the denial in district court. Section 2620(b)(4). Constitutionality of Section 2620(b)(4).

Intervenors contend that Section 2620(b)(4) allows the court through *de novo* hearing to substitute its judgment for that of the EPA and thereby control the administration of the Act, which they argue violates the separation of powers doctrine. Intervenors also contend that Section 2620(b)(4)(B) sets forth a different standard for the court than that required of the EPA under Section 2603(a). Specifically, Section 2603(a) requires that the EPA find that testing is "necessary" while Section 2620(b)(4) does not make the same requirement for the court. This in the intervenors' opinion amounts to a legislative veto because it subordinates the executive to the judiciary by legislative directive. As authority for this intervenors' cite *INS v. Chadda*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

Intervenors further assert that Section 2620(b)(4) provides for judicial infringement on executive powers by assigning to the judiciary an administrative function. Specifically, the administrative function is the power to substitute the court's judgment for that of the EPA on such questions as the reasonableness of the risk of exposure to a chemical and the sufficiency of the technical evidence available to the EPA administrator. Section 2620(b)(4)(B). These questions are political in nature, the argument goes, in that they require judgments on the acceptability of the risks of particular chemicals to the environment. Plaintiffs' answer that TSCA is unquestionably constitutional and points to a host of examples where the legislature assigned to the judiciary *de novo* review of administrative decisionmaking; e.g., Consumer Product Safety Act (15 U.S.C. § 2059); Food Stamp Act of 1964 (7 U.S.C. § 2023(a)); Robinson–Patman Amendment to Section 2 of the Clayton Act and the Equal Employment Opportunity Act.

Plaintiffs further answer that the failure to require the court to find that testing be "necessary" as required of the EPA by Section 2603(a) is in effect comparing apples and oranges. Section 2620(b)(4) permits a court to force the EPA to commence rulemaking procedure, not adopt a rule. Section 2603(a) establishes the findings that the EPA must make before it can adopt a rule. Thus no political issue is before the court; it remains solely with the EPA.

The administrator in his brief argues that Section 2620(b)(4) is frought with constitutional peril and argues that to preserve its constitutionality the court should interpret this statute very narrowly and hold that the court's sole role is to conduct evidentiary hearing and to give sole deference to the agency's judgment regarding the need for instituting rulemaking.

The *amicus*, Natural Resources Defense Council, generally agrees with plaintiffs: that intervenors' argument improperly equates the two distinct steps in the process of rulemaking: the petition to initiate rulemaking and the findings required to promulgate a rule. Thus all Section 2320(b)(4) provides is the power of courts in proper circumstances to order the EPA to commence rulemaking process under clearly defined circumstances. *See*, e.g., Section 706 of the Administrative Procedure Act ("APA"). *Wisc. Electric Power Co. v. Castle*, 715 F.2d 323, 328 (7th Cir.1983).

**152**

## DISCUSSION

■ Intervenors in making their constitutional arguments misread the format of TSCA and this misreading causes them to read certain powers to the judiciary in Section 2620(b)(4) that are not there. A possible factor in misreading TSCA is due to the type of relief prayed for in plaintiffs' complaint. Plaintiffs' prayer for relief goes far beyond requesting the initiation of rulemaking procedure that is provided for in Section 2620(b)(4). Plaintiffs' complaint seeks a "trial *de novo*" on the issues of, *inter alia*, (1) determining the name and nature of every business in southeast Chicago which uses or emits any of the identified substances or mixtures; and (2) compelling these businesses to begin testing to determine the effect of these substances (complaint, pp. 7–9).[1]

It is clear from reading the entire Act that the EPA can initiate rulemaking proceedings under Section 2603 whenever it likes without making any findings whatsoever. In order to do so however it must abide by the requirements of Title, Section 553, of the APA, as well as 15 U.S.C. § 2603(b)(5). Section 553 of APA provides for notice and other procedures and Section 2603(b)(5) provides for oral presentations of data, views or arguments and the opportunity for written submission by interested parties. Also a transcript must be made of any oral presentation and the administrator must make and publish at the time the rule is promulgated the findings required in paragraph 1(A) or 1(B) of Section a of Section 2603.

Section 2603(a)(1) provides that if the administrator does make certain findings that he must promulgate rules requiring testing. This section makes clear that the administrator can only require testing if he makes the specific findings set forth in Section 2603(a)(1)(A)(i), (ii) and (iii). Whatever rule is adopted pursuant to Section 2603 is then subject to administrative review under Section 2618, with appeal directly to the Circuit Court of Appeals as provided.

On the other hand, Section 2620 was adopted by Congress to allow citizens to prod the EPA into action by petitioning for the initiation of rulemaking procedure which must be carried out under the APA and Section 2603(b)(5) procedures. If the petition is denied or ignored the citizens may appeal to the district court for *de novo* review of the denial or inaction. Since there is no record for the court to review Congress provided for *de novo* review (*Senate Report* at p. 29.) If a petitioner can satisfy the court by a preponderance of the evidence that the action requested in the petition conforms to the requirements of the Act, the court shall order the petitioner to initiate the rulemaking procedures requested by the petitioner (*id.*). However initiating rulemaking proceedings does not in anyway require the adoption of rules. In fact unless the EPA makes the findings required by Section 2603(a)(1) it cannot adopt a rule requiring testing. These findings can only be made by the EPA; not by the court. Permitting a court to require the executive to initiate rulemaking upon judicial findings has never been held to be a violation of the separation of power. *Wisc. Electric Power Co. v. Costle*, 715 F.2d 323, 328 (7th Cir.1983); *WWHT, Inc. v. FCC*, 656 F.2d 807, 1818 (D.C.Cir.1981). If the Act permitted the court to substitute its judgment and promulgate the final rule, a significant intrusion into executive power would exist but that is not the case here. It is the duty of the federal court to construe a statute in order to save it from constitutional infirmities. *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 2614, 101 L.Ed.2d 569 (1988).

Accordingly, we hold that 15 U.S.C. § 2620 in a proper case permits a federal court to require that the EPA initiate rulemaking procedures and is constitutional.

IT IS SO ORDERED.

---

**1.** In plaintiffs' Brief in Support of the Constitutionality of Section 21(b)(4) they appear to be narrowing their relief, seeking only an order requiring the EPA to commence a rulemaking proceeding (plaintiffs' brief, p. 6).