Peter LANIOK, Plaintiff,

v.

**ADVISORY COMMITTEE OF the BRAINERD MANUFACTURING COMPANY PENSION PLAN, Defendant.**

No. CIV–89–1267T.

United States District Court,
W.D. New York.

Nov. 27, 1990.

Peter C. Nelson, Rochester, N.Y., for plaintiff.

Paul J. Yesawich, Harris, Beach & Wilcox, Rochester, N.Y., for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

Plaintiff Peter Laniok commenced this action pursuant to 29 U.S.C. §§ 1001, 1132 of the Employee Retirement Income Security Act ("ERISA"), alleging that he had been unfairly denied pension benefits by his former employer, the Brainerd Manufacturing Company. In its answer, the defendant averred as its first affirmative defense that Laniok signed a waiver at the commencement of his employment foreclosing him from participating in the company pension plan. Both parties have conducted some discovery and each now moves for summary judgment with respect to this issue. The plaintiff additionally moves to amend its complaint to add a state law age discrimination claim under the New York Human Rights Law. For the reasons discussed below, the defendant's motion for summary judgment motion is granted.

Plaintiff Peter Laniok is a 70 year old high school graduate. Following high school, plaintiff held various jobs, including a position with Eastman Kodak Company in its tool and die apprenticeship program. Laniok eventually became employed by the Stromberg–Carlson Company in 1945 and remained there until 1977. Deposition of Peter Laniok dated May 30, 1990, at 120–21. By that time, Laniok was earning $8.20/hour and had become eligible to receive full benefits under Stromberg–Carlson's pension plan. Laniok voluntarily retired in August of that year and immediately thereafter began receiving full retirement pension benefits in the amount of $298.52/month. Affidavit of Paul Yesawich dated July 24, 1990, 3–4.

Laniok, who was then 57 years old, soon began looking for other employment to supplement his income. After several months of searching, Laniok learned from a former co-worker at Stromberg–Carlson that Brainerd Manufacturing Company ("Brainerd") was looking for a tool and die maker. Laniok applied and received an interview with Brainerd's president, Harry Lippman on February 3, 1978. Laniok Dep. at 146. During the course of that interview, Lippman informed Laniok that because of his age, the company could not afford to fund his participation in its pension plan. Laniok told him that he was already receiving a pension and that he intended to work only until he began receiving Social Security. Based upon these representations, the two negotiated and agreed upon the plaintiff's salary. *See* Deposition of Harry Lippman dated February 5, 1990, at 8–11. That night, Laniok discussed the job with his wife and informed Lippman of his acceptance the next day. Laniok Dep. at 147–149.

On February 6, 1978, Laniok started working for Brainerd as a toolmaker at a wage of $8.00/hour. A few days later, on February 9, 1978, Lippman's secretary, Mrs. Storto, presented and Laniok signed a form waiving his rights to participate in the Brainerd plan. Laniok understood at the time that he was surrendering his rights to pension benefits although he did not know what those benefits actually were.[1] Laniok Dep., at 150–154. According to his testimony, Laniok believed that he would either get fired or end up working under poorer conditions if he did not agree to the waiver. *Id.* Laniok admitted, however, that no such representations were made to him by Lippman or anyone else at Brainerd.

---

1. The plan in question is a noncontributory, defined benefit plan. Under its terms, all employees of Brainerd who were not covered by a designated retirement plan were eligible and automatically became a participant of the plan on September 1 following one year of service. The employees became 30% vested after 3 years of service with that vesting period increasing 10% each year until full vesting after the 10th year of service.

Sometime in 1985 or 1986, Laniok requested but Lippman would not agree to a retraction of the waiver. Laniok retired from Brainerd on June 30, 1988 and soon thereafter made a claim for pension benefits to the Plan Administrator. That claim and a subsequent appeal were both denied.

## DISCUSSION

### 1. *Subject Matter Jurisdiction*

▮ The defendant argues initially that this court has no subject matter jurisdiction over this action because plaintiff is not a "participant" entitled to sue under 29 U.S.C. § 1132(a)(1)(B). That section provides, in pertinent part, that:

a civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). The term "participant" is defined as "any employee or former employee of an employer ... who is *or who may become eligible* to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7) (emphasis added). The Supreme Court has recently construed this language as including former employees "who have 'a colorable claim' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989); *accord Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (2d Cir. 1985). Under this definition, a plaintiff will be deemed a "participant" for jurisdictional purposes as long as he has "a colorable claim that ... he ... will prevail in a suit for benefits." *Id.* Regardless of the outcome of the instant action, it is clear that plaintiff has a sufficiently "colorable"

claim for pension benefits to confer jurisdiction on this court.

### 2. *Plaintiff's Alleged Waiver of His Right to Participate in the Plan*

▮ The plaintiff argues that his alleged waiver is void as against public policy. I disagree. While the statutory right to participate in a pension plan is certainly an important one, neither public policy nor the ERISA statute itself preclude an employee from waiving that right as long as he does so knowingly and voluntarily.

▮ The plaintiff's public policy argument is flawed insofar as it misconstrues the reasons which motivated ERISA's enactment. As the general policy provisions of ERISA make clear, ERISA grew out of Congressional concern that the rapid and substantial growth in the size, scope and number of employee benefit plans had or would undermine their fiscal integrity. 29 U.S.C. § 1001(a). Congress' principal aim in designing ERISA was therefore to ensure that employees and their designated beneficiaries not be deprived of those anticipated benefits to which they were entitled. *Id.; Central States v. Central Transport, Inc.*, 472 U.S. 559, 569, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447, *reh'g denied*, 473 U.S. 926, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354, *reh'g denied*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1137 (1980). Despite plaintiff's contentions to the contrary, nothing about this underlying policy concern suggests that Congress intended to create mandatory pension plan coverage or to preclude employees from waiving their right to participate in such plans where they deem it in their best interest to do so.[2]

---

**2.** Notwithstanding plaintiff's arguments to the contrary, such waivers are readily distinguishable from those which attempt to release an employee's rights under Title VII or other anti-discriminatory statutes. Those waivers concern themselves not with benefits expectations, but with an individual's preeminent right to equal employment opportunities. Unlike ERISA, the

strictures of those statutes "are [therefore] absolute," and not susceptible to prospective waiver insofar as they "represent a congressional command that each employee be free from discriminatory practices." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974).

■ This conclusion is supported by reference to the provisions of ERISA itself. Although a "comprehensive and reticulated statute," *Nachman Corp.*, 446 U.S. at 361, 100 S.Ct. at 1726, ERISA contains no language either expressly prohibiting or limiting the use of waivers with respect to employee benefits. *Cf.* 29 U.S.C. § 1053.[3] It does not even mandate that employers provide any particular benefits, *Shaw*, 463 U.S. at 91, 103 S.Ct. at 2896; *Alessi v. Raybestos–Manhatten, Inc.*, 451 U.S. 504, 512, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981), nor does it require that every employee be covered in an existing plan, 29 U.S.C. § 1001. *See also* Internal Revenue Code §§ 410, 410(b). In light of the policies which motivated its enactment, the absence of any prohibitory language and the non-compulsory nature of employee benefits plans in general, I see no reason why employees should not be able to waive their right to receive ERISA benefits, *accord Gaynor v. Ephrata Comm. Hosp.*, 690 F.Supp. 373, 376 (E.D.Pa.1988), subject, of course, to certain restrictions.

First, the waiver agreement may not be executed in a manner that violates either ERISA or any other federal statute. *See* 29 U.S.C. § 1144(d).[4] Second, as with all waivers, an employee's release of his rights to ERISA benefits must be both "knowing and voluntary." Plaintiff contends that his putative waiver fails to satisfy either of these criteria. I will deal with each of these arguments in turn.

a. Validity of the Waiver Under ERISA's Age Discriminatory Provision—29 U.S.C. § 1052(a)(2)

■ Plaintiff claims initially the defendant's waiver agreement effectively discriminates against him on the basis age and therefore violates section 29 U.S.C. § 1052(a)(2). As it existed at the time plaintiff signed the agreement, § 1052(a)(2) provided that:

No pension plan may exclude from participation (on the basis of age) employees who have attained a specified age, unless—

(A) the plan is a—

(i) defined benefit plan, or

(ii) target benefit plan ..., and

(B) such employees begin employment with the employer after they have attained a specified age which is not more than 5 years before the normal retirement age under the plan.[5]

Considering the language of statute itself, the plaintiff's argument must fail for several reasons. First, the plan in question here is a "defined benefit plan" and therefore is expressly exempted from the purview of this provision. Second, even were this not the case, § 1052(a)(2), on its face, applies only to "pension plans" which exclude certain employees on the basis of age. *See, e.g., Citizens for a Better Environment v. Thomas*, 704 F.Supp. 149, 148 (N.D.Ill.1989). Nothing in the provision indicates that Congress meant to prohibit employers from individually negotiating waiver agreements with older employees at the time of hiring.

Such a straightforward construction of § 1052(a)(2) is supported by ERISA's legislative history. As the Congressional record makes clear, Congress realized at the time it enacted ERISA that "older employees [already] face sufficient obstacles in seeking employment," and that without permitting employers a certain degree of

---

**3.** Section 1053 expressly prohibits the forfeiture of an employee's *vested* pension rights once he has reached the normal retirement age and has satisfied all the other eligibility requirements. This provision is wholly consistent with ERISA's fundamental goal of ensuring that employee pension expectations are not defeated. *Alessi v. Raybestos–Manhatten, Inc.*, 451 U.S. 504, 510–13, 101 S.Ct. 1895, 1899–1901, 68 L.Ed.2d 402 (1981); *Nachman Corp.*, 446 U.S. at 371–373, 100 S.Ct. at 1731–32; *see also Bruchac v. Universal Cab Co.*, 580 F.Supp. 295, 304 (N.D.Ohio 1984).

**4.** Section 1144(d) provides, in pertinent part, that "[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law."

**5.** Section 1052(a)(2), as amended in 1986 and effective as of January 1, 1988, now states simply that "[n]o pension plan may exclude from participation (on the basis of age) employees who have attained a specified age." 29 U.S.C. § 1052(a)(2) (1986).

flexibility in hiring them, it might actually hamper their search for new employment by accentuating the differential in pension costs between them and younger employees. *See* Sen.Rep.No. 93–383, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4890, 4905.[6] In light of these concerns, it would be quite ironic to now construe § 1052, as it read at the time of the waiver, in a manner which would have effectively discouraged employers from hiring older workers, and which, at any rate, would go far beyond the express language of the provision itself. I decline to do so and therefore hold that the agreement, as executed, did not violate ERISA's age discriminatory provision.

b. Validity of the Waiver Under ADEA

■ The plaintiff argues in the alternative that execution of the waiver agreement violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). I disagree. While age was certainly a factor in defendant's decision to present Laniok with the ERISA waiver form,[7] the defendant's actions cannot fairly be said to constitute the type of age discrimination proscribed by ADEA.

Under § 4(a)(1) of ADEA, it is unlawful for an employer

> to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). Notwithstanding this general prohibition, however, § 4(f)(2) of ADEA provides that it is *not* unlawful for an employer

> to observe the terms of ... any bona fide employee benefits plan ... which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such ... employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual.

29 U.S.C. § 623(f)(2).

The Supreme Court has recently written exhaustively on the import of these two provisions as they pertain to employee benefits plans. *See Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). In *Betts*, the Court held that to give § 4(f)(2) proper effect, it should be construed broadly to exempt all bona fide benefit plans from the purview of ADEA as long as they are not disguised attempts to discriminate with respect to other, nonfringe-benefit terms and conditions of the employment relationship. 109 S.Ct. at 2866. The Court derived support for its interpretation, in part, from the statements of Senator Javits, the provision's sponsor. As the Court noted:

> One factor motivating Senator Javits' amendment [adding § 4(f)(2)] was the concern that, absent some exemption for benefit plans, the Act might 'actually encourage employers, faced with the necessity of paying greatly increased premiums, to look for excuses not to hire older workers when they might have done so under a law granting a degree of flexibility with respect to such matters.' Reducing the cost of hiring older workers was not the only purpose of the pro-

---

**6.** Indeed, the former § 1052(a)(2)(B) exemption, which permitted the exclusion of workers within five years of normal retirement age, represented one of many attempts by Congress to ensure that the Act as a whole not have the effect of encouraging age discrimination. *See Duchow v. New York State Teamsters Conference*, 691 F.2d 74, 78 (2d Cir.1982), *cert. denied*, 461 U.S. 918, 103 S.Ct. 1902, 77 L.Ed.2d 289 (1983).

**7.** The defendant conceded as much at oral argument and Mr. Lippman so testified at his deposition:

Q. Why, Mr. Lippman, did you have Mr. Laniok sign such an agreement? What was your reason for doing so?
A. Because I think he was 58 or 59 years old at the time, right?
Q. That is correct.
A. And checking what his pension costs would be. They were very exorbitant, very costly. I told him that is why I could only pay him the fee we agreed upon, the wage.

Lippman Dep. at 14.

posed amendment, however. Its goals were far more comprehensive. As Senator Javits put it, 'the age discrimination law is not the proper place to fight' the battle of ensuring 'adequate pension benefits for older workers' ...

109 S.Ct. at 2867. The Court concluded that § 4(f)(2) was intended merely "to emphasize the primary purpose of the bill—hiring of older workers—by permitting employment *without necessarily including such workers in employee benefit plans.*" *Id.* (citing S.Rep. No. 723, 90 Cong., 1st Sess., at 4 (1967) (emphasis added).[8]

In light of the legislative history behind § 4(f)(2) and the Court's expansive language in *Betts,* I see no reason to draw a distinction between employee benefit plans which exclude older workers and the waiver situation present here. Under either scenario, the "primary purpose" of ADEA is served insofar as older workers obtain employment they might not otherwise have received had the employer been faced with the prospect of funding their pension benefits. While this situation, like any compromise, is far from ideal, it does recognize certain practical age-related cost considerations faced by employers, such as the defendant here, attempting to hire older employees. Absent a showing that the defendant somehow intentionally discriminated against terms and conditions of plaintiff's employment outside of the employee benefit context, the waiver agreement cannot be said to violate either the policies or the substantive provisions of ADEA.

c. Voluntariness and Knowingness of Plaintiff's Waiver

■ In determining whether an employee's waiver of ERISA benefits was knowingly and voluntarily executed, the courts should consider a number of factors, including (1) the clarity of the waiver agreement, (2) the sophistication of the employee, (3) the amount of time the employee had possession or access to the waiver agreement before signing it, (4) whether the employee had an opportunity to consult an

attorney, and (5) the employee's role in negotiating the other terms and conditions of his employment relationship. *See Gaynor,* 690 F.Supp. at 376; *cf. Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 403 (2d Cir.) (standard governing release of ADEA claims), *cert. denied,* —— U.S. ——, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989). While each of these factors is relevant in assessing the validity of a given waiver, no one factor need predominate nor must each be considered.

■ Applying these principles to the circumstances present here, it is clear that the plaintiff's waiver is valid and should be upheld. First, the waiver agreement itself is unambiguous on its face, stating in plain language that the plaintiff, in signing it, "desire[s] not to participate in the Brainerd Manufacturing Pension Plan, ... [and] hereby waive[s] participation in that plan." Affidavit of Paul Yesawich dated July 24, 1990, Exhibit E. Second, plaintiff was aware of both the nature and importance of ERISA benefits as a result of his prior participation in the Stromberg–Carlson plan. Laniok Dep. at 126–130. The plaintiff, in fact, testified that he chose to participate in that plan because he thought "it was the wise thing to do." *Id.* at 130. Third, the plaintiff had a sufficient opportunity to negotiate the terms and conditions under which the waiver was to be executed before actually agreeing to it. As Lippman testified at his deposition:

Q. When you met with Mr. Laniok, did you discuss the terms of his proposed employment?

A. We did, and because of his age, he ... wanted too high a pay.

Q. Do you remember in substance what he said to you about his proposed compensation?

. . . . .

A. Well, he told me he was getting a pension ... He was 58 years old, and we discussed salary. And I said because

8. Indeed, as the Court pointed out, "at least one Congressman opposed the ADEA precisely because it permitted employers to exclude older employees from participation in benefit plans altogether when the terms mandated that result." 109 S.Ct. at 2867.

of his age, we don't think we could pay him that much money he wanted [sic].

.    .    .    .    .

Q. What did he say when you told him you could not pay him that much money?

A. Well, he said he was willing to negotiate and work for less, and we discussed that ...

[H]e told me was willing to work [it] out because he needed a job and because of his age, wasn't easy to get a job ... He specified that ... I told him pension costs are very expensive.

Q. How did the subject of the pension costs come up, if you can remember?

A. Yes, because he said he don't need a pension. He has a pension and furthermore, he said he only wanted to work until he was qualified for Social Security ...

Lippman Dep. at 8–10; *cf.* Laniok Dep. at 147–48. The fact that plaintiff may have had the agreement for only an hour before signing it is therefore immaterial.

 Furthermore, considering that the plaintiff executed the waiver almost a week after his initial meeting with Lippman, he had more than enough time to contemplate the import of his decision and consult with counsel if he felt it necessary. *See Gaynor,* 690 F.Supp. at 376.[9] In sum, this not a situation where an employee has unwittingly executed a waiver of rights which he knew nothing about. The plaintiff had already participated in and was receiving benefits from another plan, had a sufficient opportunity to and did negotiate the terms and conditions of his employment, and, only after mulling over his decision for nearly a week, signed a form clearly and unambiguously waiving his right to participate in the defendant's plan. Under such circumstances, I will not now allow the plaintiff to back out of his agreement. Accordingly, the defendant's motion for summary judgment is granted.

9. I agree with the court in *Gaynor* that under these types of circumstances, an employer does not have a duty to "apprise an employee of all the ramifications of deciding not to participate

ALL OF THE ABOVE IS SO ORDERED.

in a pension plan." 690 F.Supp. at 376; *see also Belade v. ITT Corp.,* 909 F.2d 736, 737–38 (2d Cir.1990) (per curiam).