757 F.2d 52
 6 Employee Benefits Ca 1395
 Merle R. EDWARDS, James Bridgland, William Fisher, Edward J.
Schrode, John T. Tredinnick, and Richard L. Zath, Appellants,
v.
WILKES-BARRE PUBLISHING CO. PENSION TRUST and Wilkes-Barre
Publishing Co., Appellees.
 No. 84-5107.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 25, 1984.
Decided March 7, 1985.
Rehearing and Rehearing In Banc Denied April 9, 1985.
 
 Warren J. Borish (argued), Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellants.
 R. Eddie Wayland (argued), King, Ballow & Little, Nashville, Tenn., Richard M. Goldberg, Hourigan, Kluger, Spohrer & Quinn, Wilkes-Barre, Pa., for appellees.
 Before GIBBONS and BECKER, Circuit Judges, and KATZ, District Judge*.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This appeal presents the question whether the trustees of a pension plan governed by the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq. (ERISA), acted arbitrarily and capriciously or in violation of the vesting, accrual, and funding provisions of ERISA by including in the calculation of plaintiffs/appellants' pension benefits a period during which appellants were on strike and therefore were not compensated. The district court held that the trustees did not act in such a manner, and entered judgment for the defendants/appellees. We affirm.
 
 I. FACTUAL AND PROCEDURAL HISTORY
 
 2
 This suit arises out of an impasse in collective bargaining between the Wilkes-Barre Publishing Company (the "Company"), publisher of the Times Leader, and the four separate labor organizations representing various groups of company employees. On October 6, 1978, appellants, all of whom were long-term employees of the Company and fully vested under its pension plan, ceased active employment with the Company when they began participation in a strike against it.[1] Appellants never returned to their jobs, retiring while still out on strike. Shortly thereafter, each appellant applied for benefits under the Wilkes-Barre Publishing Company Pension Trust (the "Plan").
 
 
 3
 The Plan provides that a participant shall have a fully vested right to pension benefits after he or she has completed ten years of credited service with the Company (see Appellees' Brief, Exhibit I, Art. 5, Sec. 5.01 (hereinafter "Ex. 1")). Participants who retire on the normal retirement date, which is defined as the participant's sixty-fifth birthday (see Ex. 1, Art. 3, Sec. 3.1; Art. 1, Sec. 1.4(n)), are entitled to a normal retirement pension. The Plan also provides for the receipt of early retirement and disability retirement benefits (see Ex. 1, Art. 3, Sec. 3.1 and 3.4).
 
 
 4
 The formula for computing the amount of pension benefits available to participants who elect any of the types of retirements mentioned above is based, inter alia, upon an average compensation component. This compensation component is derived by calculating twenty-two percent of the retiree's average annual compensation. Average annual compensation is defined as the average yearly compensation received by a Plan participant during the five-consecutive-year-period immediately prior to the earlier of (1) the participant's sixty-fifth birthday, or (2) the date of the participant's termination of employment (see Ex. 1, Art. 1, Sec. 1.4(d)). The Plan, however, does not define termination of employment. Notwithstanding the foregoing, the Plan provides for a minimum monthly pension benefit of not less than one hundred dollars. This minimum may be reduced pro rata for credited service less than fifteen years (see Ex. 1, Art. 4, Sec. 4.1(c)).
 
 
 5
 In calculating appellants' benefits, the trustees interpreted the Plan to include in the computation of average annual compensation the period during which appellants were on strike and, therefore, received no compensation from the Company. Under this interpretation, the monthly pension that each appellant was entitled to receive was significantly less than it would have been had appellants continued to work (rather than strike) until retirement. Similarly, the pension benefits were less than they would have been had appellants chosen to terminate their employment and take immediate retirement rather than to go out on strike.
 
 
 6
 In the three strikes that preceded the 1978 strike, strikers did not experience a reduction in their pension benefits due to the inclusion of strike time in the calculation of average annual compensation. According to the district court, "it is uncontroverted that in each prior strike, the result [appellants] now seek ... was obtained as part of the negotiated settlement of each strike." App. at 1059. For example, as part of the collectively-bargained settlement of the 1954 strike, the Company paid retirees whose benefit calculation included the time period covered by the strike an additional amount equal to the reduction of benefits due to lost wages. And, pursuant to agreements arising out of the 1973 and 1974-75 strikes, a period of time equal to the length of the strike was added to the five-year period in the calculation of average annual compensation.
 
 
 7
 Dissatisfied with the trustees' interpretation of the Plan in the midst of this latest strike, appellants filed this suit on October 21, 1981, to compel a recalculation of their pension benefits. Named as defendants were the Wilkes-Barre Publishing Company Pension Trust and the Wilkes-Barre Publishing Company. On cross motions for summary judgment, the district court held that defendants acted reasonably in their calculation of plaintiffs' pension benefits and that no violation of ERISA occurred. The district court granted summary judgment in favor of the Pension Trust and the Company, and this appeal followed.[2]
 
 II. DISCUSSION
 A. Statute of Limitations
 
 8
 As an initial matter, we must address appellees' contention that appellants' claim is barred by the applicable statute of limitations.[3] In appellees' submission, since no statute of limitations is directly applicable to cases of this type, the appropriate statute of limitations is Pennsylvania's thirty-day period for vacating arbitration awards under 42 Pa.Cons.Stat.Ann. Sec. 7314 (Purdon 1982). In support of this contention, appellees rely on United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1982), where the Supreme Court held that an employee's wrongful discharge claim against his employer was governed by the state statute of limitations for vacatur of arbitration awards. In the alternative, appellees argue that the six-month limitations period embodied in Sec. 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b), should apply. The appellees rely in this respect on Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), where the Court supplanted the Mitchell rule and applied the six-month statute of limitations in Sec. 10(b) to duty of fair representation cases.
 
 
 9
 Appellants counter that this action is not barred by a statute of limitation defense in light of this court's decision in Adams v. Gould, 739 F.2d 858 (3d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). In Adams, employees brought an action against the pension plan trustee for breach of fiduciary duty in refusing to pay pension benefits. The defendants claimed that the suit was barred by the six month statute of limitations in Sec. 10(b) of the NLRA. This court, however, refused to apply the statutory period of Sec. 10(b), reasoning that where a dispute involves collectively bargained pension rights, the policies underlying the adoption of a six-month statute of limitations, primarily the need to resolve disputes quickly to preserve labor peace, are inapplicable. Instead, noting that the Supreme Court in Del Costello emphasized the desirability of uniform national limitations periods to govern actions arising under federal statutes, id. at 866, we held that the three-year ERISA statute of limitations, 29 U.S.C. Sec. 1113, should be applied, and that the employees' suit was not time barred.
 
 
 10
 Appellees argue that Adams is inapposite to the case at bar because the present lawsuit is intimately related to a strike that has not yet settled. We disagree. Although the dispute between the parties has its foundation in a long-running labor dispute, appellants have retired from the Company and there is no indication that resolution of their disagreement with the pension trustees will have even the remotest bearing on the marathon labor dispute between the Company and the unions. See supra note 1. Rather, this case, like Adams, involves the long term interests of present beneficiaries to a pension plan, not the disputed terms of a collective bargaining agreement that affects the day-to-day operation of a business. Accordingly, we hold that Adams is controlling, and that appellants thus had three years to file their complaint. The earliest time that appellants' claim accrued was February, 1979, when the first of the appellants retired. Since the complaint was filed in October, 1981, appellants fall well within the statutory period.
 
 
 11
 Appellees' proffered procedural grounds having failed, we now turn to the substantive issues arising out of this dispute.
 
 
 12
 B. Was the Trustees' Calculation of Benefits Arbitrary and Capricious?
 
 
 13
 Section 1104(a)(1) of ERISA, which sets out the fiduciary duty of pension plan trustees, provides, in pertinent part:a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 
 
 14
 (A) for the exclusive purpose of:
 
 
 15
 (i) providing benefits to participants and their beneficiaries; and
 
 
 16
 (ii) defraying reasonable expenses of administering the plan ...
 
 
 17
 29 U.S.C. Sec. 1104(a)(1). When the amount of benefits to which a distinct group of beneficiaries is entitled turns upon an interpretation of an undefined term in the plan, pension trustees must necessarily strike a balance between the interests of the beneficiaries who are members of this group and beneficiaries who are not. If the trustees choose an interpretation that results in a greater amount of benefits to be paid to members of the group, the result is less money available to pay the benefits of non-members. Because the trustees in these circumstances must reconcile competing interests of different beneficiaries, the trustees' choice cannot be said to violate their fiduciary duty unless it is arbitrary and capricious. See Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 333-34 (3d Cir.1984). Appellants contend that, for several reasons, the trustees' decision to include strike time in calculating appellants' pension benefits was an arbitrary or capricious interpretation of the Plan. For the reasons set forth below, however, we conclude, as did the district court, that the trustees did not act arbitrarily or capriciously, but rather calculated appellants' pension benefits in accordance with a reasonable interpretation of the terms of the Plan.
 
 
 18
 Appellants first argue that the trustees deviated from their past practice of granting credit for uncompensated strike time in calculating appellants' pension benefits. According to appellants, the trustees' failure to adhere to past practices was nothing more than a punitive action by the Company against appellants for their participation in legally protected strike activity and therefore constituted arbitrary and capricious conduct. We disagree. The present circumstances differ markedly from previous strike situations. The treatment of strike time following the earlier strikes was resolved in the context of collectively bargained settlements and the return to work by striking employees. The 1978 strike, on the other hand, has never been settled. Thus, the practice in the wake of previous strikes bears little relevance in determining whether the trustees' method of calculating appellants' pension benefits in this instance was arbitrary and capricious.
 
 
 19
 Appellants further argue that the trustees violated their fiduciary duty by adopting an interpretation of the Plan that substantially reduces the anticipated vested pension benefits of appellants and other striking employees. According to appellants, where there are two equally plausible interpretations of the language of a plan, the trustees are obligated to adopt the interpretation that will inure to the benefit of the participants whose pensions are being calculated, and that action to the contrary is arbitrary and capricious.
 
 
 20
 The Plan specifies that average annual compensation is based on "the five year period immediately prior to the ... date of Participant's termination of employment." Ex. 1, Art. 1, Sec. 1.4(d) (emphasis added). The trustees interpreted this term to mean the five year period immediately preceding the date upon which each plaintiff affirmatively terminated his employment by retiring, including the time appellants were out on strike.[4] Appellants argue, however, that the operative language "termination of employment," which is not expressly defined in the Plan, could plausibly be read to mean "date of separation," defined in the Plan as "the earlier of (1) the date on which an employee quits, retires, dies or is discharged and (2) the first anniversary of the first date of a period in which an employee remains absent from service with the Company for any reason other than termination, retirement, death or discharge." Ex. 1, Art. 1, Sec. 1.4(w). Thus, a participant is "separated from employment" no later than one year after the start of the period of non-active status. Under this approach, according to appellants, the Plan would limit to one year the strike time that can be included in the calculation of average annual compensation.
 
 
 21
 Appellants' argument is without merit. The trustees' interpretation of the Plan is sensible, and is wholly faithful to the Plan's actual language. Whatever may be said of the plausibility of appellants' alternative interpretation, "[i]t is for the trustees, not the courts, to choose between two reasonable alternatives." Tomlin v. Board of Trustees, 586 F.2d 148, 151 (9th Cir.1978). The trustees are under no obligation to interpret the Plan in such a way as to benefit any particular group of beneficiaries to the detriment of others, and the mere fact that they choose not to do so is not, standing alone, any indication of arbitrary or capricious conduct. See our discussion of the trustees' fiduciary duty, supra. Thus, we must hold that appellees' method of calculating appellants' benefits to include uncompensated strike time was a reasonable interpretation of the Plan and did not constitute arbitrary and capricious conduct.[5]
 
 
 22
 C. Vesting, Accrual and Funding Standards of ERISA
 
 
 23
 Appellants argue that the reduction in monthly pension benefits occasioned by the inclusion of post-October 1978 strike time constitutes an impermissible forfeiture of vested benefits in violation of Sec. 203(a) of ERISA, 29 U.S.C. Sec. 1053(a).[6] We disagree. While a participant's right to receive benefits under the Company Plan vests and becomes nonforfeitable after ten years of service, appellants misunderstand the nature of that right as construed by the Supreme Court in Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).
 
 
 24
 In Alessi, the Court considered a provision in a pension plan that offset an employee's retirement benefits by an amount equal to workers' compensation awards for which the individual was eligible. Id. at 507, 101 S.Ct. at 1898. Like appellants in the case at bar, the appellants in Alessi claimed that this reduction in the benefit amount constituted a denial of vested pension rights forbidden by ERISA. In rejecting this contention, the Court observed that ERISA leaves to the private parties creating the plan the determination of the amount of benefits which, once vested, cannot be forfeited. According to the Court, "the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit." Id. at 512, 101 S.Ct. at 1900 (emphasis added). See also Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 371, 100 S.Ct. 1723, 1731, 64 L.Ed.2d 354 (1980).
 
 
 25
 We hold that the reduction in benefits occasioned by the inclusion of uncompensated strike time is not prohibited by Sec. 203(a) of ERISA. While appellants have a right to receive a monthly pension benefit as set forth in the plan, ERISA does not guarantee a particular amount or method for calculating the benefit. Appellants' attempts to distinguish Alessi are unpersuasive. They argue that the appellants in Alessi did not suffer any reduction in their vested pension benefits but received part of those benefits from another source, whereas here appellants' monthly benefits have been substantially reduced as a result of the inclusion of strike time. While that may be true, such a result is permissible since, under Alessi, the method of calculation and the level of benefits are not vested rights but rather are governed by the terms of the Plan.[7]
 
 
 26
 Appellants also contend that the trustees' method of interpreting the Plan violated the funding and accrual provisions of ERISA, but these contentions are groundless and do not merit discussion.
 
 III. CONCLUSION
 
 27
 In summary, we conclude that the trustees did not act arbitrarily or capriciously or in violation of the vesting, accrual and funding provisions of ERISA by including uncompensated strike time in the calculation of appellants' pension benefits. Consequently, we affirm the district court's grant of summary judgment in favor of appellees.
 
 
 
 *
 Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The strike has not been settled to date, and there appears to be no end in sight. A group of the striking employees helped found the rival Citizens' Voice, which is now the oldest strike newspaper in America. For an account of the Wilkes-Barre newspaper strike and its impact on the Wilkes-Barre community, see The War of the Words in Wilkes-Barre, Phila. Inquirer, Dec. 16, 1984 (Today Magazine), at 12
 
 
 [2]
 Our review of the district court's grant of summary judgment is plenary. Struble v. New Jersey Employees' Welfare Trust Fund, 732 F.2d 325, 330 (3d Cir.1984); In re Japanese Electronics Products Antitrust Litigation, 723 F.2d 238, 257 (3d Cir.1983)
 
 
 [3]
 In addition to their statute of limitations argument, appellees contend that the doctrine of laches operates to bar appellants' claim. The laches argument fails (at this stage), however, because appellants filed a timely complaint, see our discussion in text, and appellees did not conclusively establish unreasonable delay or prejudice. Appellees further argue that appellants' claim is barred by the doctrines of waiver and estoppel. According to appellees, appellants voluntarily chose to participate in a strike against the company in support of the Union's collective bargaining demands. Since appellants knew about the benefit calculation formula, the argument goes, by striking they waived their right to challenge the method of calculation provided for in the Plan
 This argument fails for two reasons. First, appellants should not be estopped from proceeding against the pension plan by reason of engaging in protected concerted activity. National labor policy counsels against construing the decision to go on strike as a waiver of vested pension benefits. Moreover, appellants could not have known when they went out on strike in 1978 that they would not receive the same treatment from the Company as strikers had received in the past. After the 1954, 1973, and 1974-75 strikes, the strikers' pension benefits were unaffected. Thus, appellants did not knowingly or voluntarily relinquish their right to proceed against the Plan when they decided to go on strike.
 
 
 [4]
 Appellees note that this interpretation is bolstered by the fact that an employee remains an employee during the time he is out on strike. See NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967); Laidlaw Corp. v. NLRB, 414 F.2d 99 (7th Cir.1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). See also Baeten v. Van Ess, 474 F.Supp. 1324 (E.D.Wis.1979) (decision of pension trustees to sever the interest of striking employees on the ground that strikers had "voluntarily terminated their employment" held to violate the national labor policy and to constitute arbitrary and capricious conduct)
 
 
 [5]
 There is an additional reason to uphold the trustees' method of calculating appellants' pension benefits. In the collective bargaining process, the union is entitled to decide whether to trade off concessions to older members, such as the exclusion of strike time in the computation of pension benefits, in favor of benefits that would inure to the advantage of younger members, such as higher salaries. To impose a rule wherein strike time must be excluded from the calculation of pension benefits whenever the terms of a plan are ambiguous would foreclose the issue from the collective bargaining process as a matter of law in such cases. Such a rule would be objectionable in light of this consequence
 
 
 [6]
 In 29 U.S.C. Sec. 1053(a), ERISA establishes certain minimum vesting standards that pension plans governed by ERISA must satisfy. Specifically, each pension plan must provide that "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." ERISA defines a "nonforfeitable" pension benefit as "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan." 29 U.S.C. Sec. 1002(19)
 
 
 [7]
 We note, however, that under the Plan appellants are entitled to a minimum monthly pension of one hundred dollars. We therefore do not have to address the question whether calculations leading to pensions of a de minimis amount might be the equivalent of a forfeiture and prohibited by ERISA