Bruce **OSBORNE,** Plaintiff,

v.

**NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND,** Defendant.

No. 90–CV–1339.

United States District Court, N.D. New York.

Feb. 21, 1992.

As Corrected Feb. 25, 1992.

---

Ramsey G. Ludington, Fulton, for plaintiff.

Peter P. Paravati by Vincent M. DeBella, Utica, for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

Plaintiff commenced this action in New York State Supreme Court, Oswego County, on October 23, 1990. Plaintiff amended his complaint on November 15, 1990. The gravamen of the amended complaint is that the defendant, an employee benefit fund, failed to pay plaintiff monthly pension benefit payments owed to him between 1983 and 1987. Contending that the action is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1988 & West Supp.1991), the defendant removed the case to this court pursuant to 28 U.S.C. § 1441 (1988 & West Supp.1991). Jurisdiction is based upon the existence of a federal question, 28 U.S.C. § 1331 (1988).

The defendant has interposed its answer, and now moves for summary judgment. The plaintiff has cross-moved for summary judgment.

## I. FACTS

In 1951, plaintiff Bruce Osborne began working as a driver for various trucking companies. From 1956 through 1971, he was a member of Teamsters Local Union

No. 317, which was (and remains) affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO ("Teamsters"). During the same time period, each of plaintiff's employers contributed funds on Osborne's behalf to the defendant, the New York State Teamsters Conference Pension and Retirement Fund ("Fund"). The Fund was created—and funds were contributed thereto—pursuant to an agreement between the participating employers and numerous local unions, including plaintiff's, affiliated with the Teamsters.

In April, 1983, when plaintiff reached 55 years of age, he allegedly requested the treasurer of his Local to make arrangements for plaintiff to receive an early pension from the Fund. Osborne Aff. (1/14/92) at 6. Between the time of his original request (in 1983) and April 1, 1987, plaintiff and Local officials wrote approximately sixteen letters to the defendant, ostensibly to secure pension payments for the plaintiff. *See id.* ¶ 7 *and* accompanying exhibits. Plaintiff's efforts to obtain pension benefits were unsuccessful until April 1, 1987, when he received his first pension payment. Defendant's refusal to pay plaintiff pension benefits before then was based on the Fund's assertion that plaintiff did not properly apply for funds until March, 1987. Since April 1, 1987, plaintiff has been receiving monthly pension benefits from the defendant Fund.

Plaintiff brought this suit in 1990, alleging that he was wrongfully deprived of $6,000.00 in pension benefits between 1983 and April 1, 1987. Defendant now moves for summary judgment, and plaintiff cross-moves for summary judgment.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant presents three independent bases supporting its motion for summary judgment:

A.  plaintiff was not entitled to pension payments until 1987, because he did not properly apply for funds until that date;

B.  plaintiff has no right to sue until he exhausts the dispute mechanisms set forth in the pension plan; and

C.  plaintiff's action is time barred.

Defendant's arguments will be discussed *seriatim.*

### A.  Whether plaintiff properly applied for funds in 1983.

Defendant's first basis for summary judgment turns on an interpretation of the Pension Plan provision governing payment of benefits.[1] In short, the Plan explicitly states that pension benefits will not be paid until the month "following receipt of an application" for benefits. According to the defense, the Fund did not receive plaintiff's application for retirement benefits until March, 1987. Under the express terms of the Plan, argues the defendant, plaintiff was not entitled to funds until he finally applied for them in 1987.

Defendant's argument gives rise to questions of contract interpretation. In cases involving interpretation of agreements, "summary judgment is perforce improper unless the terms of the agreement are 'wholly unambiguous.'" *Wards Co., Inc. v. Stamford Ridgeway Assoc.,* 761 F.2d 117, 120 (2d Cir.1985) (citations omitted). This is because a contract that is susceptible to at least two fairly reasonable interpretations raises a material issue of fact as to the actual meaning of the ambiguous term. *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 802 (2d Cir.1992) (citing *Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir.1990); *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983); *Heyman v. Commerce*

---

1.  The relevant provision states:
    Except as hereinafter provided, all pensions, including disability award pension, shall be payable for life on the first day of each month *commencing on the month following receipt of application* for pension by the Board of Trustees.... Delay in filing application for retirement benefits shall not deprive a member of any rights he may have accrued, except that there shall be no retroactive pension payments.
    New York State Teamsters Conference Pension and Retirement Fund Plan ("Plan"), at 30 (section V ¶ A.: "Payment of Benefits") (emphasis added).

& Indus. Ins. Co., 524 F.2d 1317, 1220 (2d Cir.1975), cited in Wards Co., 761 F.2d at 120. As often stated, the existence of a genuine issue of material fact dictates that summary judgment must not be granted. See Fed.R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir.1991).

▇ Plaintiff has presented a genuine issue of material fact as to the interpretation of the Plan, thus defeating defendant's motion for summary judgment in this respect. Specifically, plaintiff avers that he verbally applied for pension benefits in 1983. Verbal application for benefits, contends the plaintiff, is sufficient "application" under the Plan to justify payment of benefits. After all, nowhere does the Plan state that application for benefits must be "in writing." Moreover, plaintiff's assertion that he verbally applied for pension payments is somewhat corroborated by the sixteen letters, written by both plaintiff and Local officials to the defendant between 1983 and 1987, concerning plaintiff's request for benefits. See Osborne Aff. exh. "A" through "P". Plaintiff has thus raised a factual issue as to (1) whether verbal application for pension benefits is sufficient under the Plan, and (2) whether plaintiff indeed verbally applied for benefits.

Defendant implicitly acknowledges that the Plan itself does not expressly carry a written application requirement. Defendant nonetheless contends that the proper application procedures are outlined in the Plan Summary, and that the Plan Summary is unambiguous in its requirement of written application for pension benefits. See Plan Summary at 40, in DeBella Aff. (1/21/92) at exh. "A".[2] Defendant argues that the written application requirement set forth in the Plan Summary is entitled to the same force as the requirements of the Plan itself, in part because its inclusion in the Plan Summary is mandated by 29 C.F.R. § 2560.503–1(b)(1)(ii) (1991). Since the Fund did not receive plaintiff's written application for benefits as required by the Summary, argues the defendant, plaintiff was not entitled to pension benefits in 1983.

The problem extant here is that the Plan Summary imposes requirements for applying for pension benefits which do not exist in the Plan itself. In particular, the Plan Summary requires written application for benefits, whereas the underlying Plan is absolutely silent on the subject of how to apply for benefits. The Plan's silence is especially troublesome because the federal regulations promulgated pursuant to ERISA state in pertinent part that in the absence of reasonable claim procedures set forth in the Plan, "a claim shall be deemed filed when a written or oral communication is made by the claimant" for benefits. 29 C.F.R. § 2560.503–1(d) ("Filing of a claim for benefits") (emphasis added). In other words, the Plan's silence as to how to apply for benefits arguably means that plaintiff's verbal application would be sufficient. See id.

The Second Circuit's decision in Heidgerd v. Olin Corp., 906 F.2d 903, 907–08 (2d Cir.1990), although cited by neither party, would initially seem to support defendant's argument that the requirements set forth in the Plan Summary should control here. In Heidgerd, the terms of the Pension Plan contradicted the terms outlined in the Plan Summary. The court ruled that, to the extent that the Plan and its Summary were inconsistent, the terms set forth in the Summary would supersede those set forth in the Plan. Heidgerd, 906 F.2d at 908.

The conclusion in Heidgerd, however, was compelled by the presence of circumstances unique to that case. In particular, the employer in Heidgerd filed a Plan Summary, but not the Plan itself, with the

---

**2.** A "Plan Summary" is a booklet that must be distributed to all fund participants, describing relevant provisions of the Plan. See generally 29 U.S.C. § 1022; 29 C.F.R. § 2520.102 (1991). The purpose of the Summary is to apprise the participants of their rights and obligations under the Plan in a manner which the average plan participant could comprehend. See 29 U.S.C. § 1022(a)(1); 29 C.F.R. § 2520.102(a).

Secretary of Labor,[3] and distributed only the Plan Summary (and not the Plan itself) to the employees. *Id.* at 907. Under those circumstances, the Second Circuit ruled that the employer could not expect to rely on the terms of the Plan to contradict the terms of the Plan Summary. In such a case, wrote the court, "[t]o allow the Plan to contain different terms that supersede the terms of the [Plan Summary] would defeat the purpose [of ERISA] of providing employees with summaries." *Id.* at 907–08 (citing *McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566 (11th Cir. 1985)); *see supra* n. 2 (purpose of the Plan Summary requirement).

This court finds that the ruling in *Heidgerd*—that the terms of the Plan Summary are controlling when they contradict the terms of the Plan—was compelled by the particular facts in that case. The unique circumstances of *Heidgerd* do not exist in most cases, nor do they exist in the present case. For example, defendant here, unlike the defendant in *Heidgerd,* did file the underlying Plan with the Secretary of Labor, thus giving the Plan legal effect. In *Heidgerd,* the fiduciary's filing with the Secretary of the Plan Summary but not the Plan itself precluded the fiduciary from arguing the validity of the Plan.

The case at bar presents facts more akin to those considered by the Seventh Circuit is *Kolentus v. Avco Corp.,* 798 F.2d 949, 958 (7th Cir.1986), *cert. denied,* 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987). In *Kolentus,* the court held that the Plan Summary required by 29 C.F.R. § 2560.-503–1 is meant merely to guide the interested employee, and that the Plan itself controls the terms of the pension agreement. The decision in *Kolentus* turned on the fact that the Plan Summary expressly stated that it was merely an outline of the pension plan, and that the formal text of the Plan governed in the event that a conflict arose. *Kolentus,* 798 F.2d at 958. Since the Plan Summary in *Kolentus* was so clearly just that—a summary—as opposed a Plan, a reasonable person would have realized that the terms of the Plan

Summary were not binding, but rather were merely interpretive of the binding terms of the Plan itself. *Id.*

The result in *Kolentus* was that the plaintiff could not rely on the terms of the Plan Summary to offset the inconsistent terms of the Plan. In so ruling, the court in *Kolentus* followed the prevailing view, that "[w]hen literature expressly states that it merely summarizes a pension plan, the master contract controls." *Van Orman v. American Ins. Co.,* 680 F.2d 301, 307 (3d Cir.1982) (citations omitted); *Anthony v. Ryder Truck Lines, Inc.,* 466 F.Supp. 1287, 1292–93 (E.D.Pa.1979).

In the present case, the Plan Summary upon which defendant seeks to rely notifies the reader that it is a mere summary of the Plan, and is not the controlling document. One can immediately notice that the Summary is explicitly labeled on its front cover as the "Summary Plan *Description of* Your Pension Plan" (emphasis added). There is no doubt from this label that the Summary Plan is a description of a Plan, *to wit* the employees' Pension Plan, as opposed to the Plan itself. Even more telling is the express statement found on page 44 of the Plan Summary, which is nearly identical to that described by the court in *Kolentus:*

> The rules and regulations set forth in the Plan Document are final and binding. Nothing in this booklet is meant to interpret or extend or change in any way the provisions in the Plan Document itself. If there is any difference between the Plan Document and the summary in this booklet, the Plan Document will control.

Plan Summary at 44. As in *Kolentus,* the Plan Summary here could not be more clear. The provisions set forth in the Plan Summary have no bearing on the actual requirements of the Plan itself. The Plan, not the Summary, dictates the controlling procedures for filing a claim for benefits. *Cf. Kolentus,* 798 F.2d at 958.

In light of the conspicuous title on the cover of the Plan Summary and the disclaimer on page 44, this court can safely

---

**3.** Pursuant to the filing requirement set forth in

ERISA, 29 U.S.C. § 1021(b).

conclude that the reasonable reader is alerted that the Summary does not establish Plan procedures. Hence, the defendant is not permitted to rely on the Summary to argue that the Plan *requires* written application for pension benefits.[4] The terms of the Plan, not its summary description, are determinative of the proper procedures for applying for benefits. *Cf. Orman,* 680 F.2d at 307.

■ Whether plaintiff's alleged verbal application for funds is sufficient under the terms of the Plan provision cited above, *see supra* p. 741, is a question of interpretation for the fact finder to resolve. The defendant will understandably contend that receipt of plaintiff's alleged verbal request for benefits is inadequate and does not entitle the plaintiff to payment of funds. Defendant's interpretation of the Plan, however, is hardly binding; rather, the fiduciary's interpretation is subject to *de novo* review by the trier of fact. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Heidgerd,* 906 F.2d at 908. Since plaintiff's interpretation of the Plan raises an issue as to the proper interpretation of the Plan, there exists a genuine issue of material fact, thus allowing plaintiff to withstand defendant's motion for summary judgment. *Cf. Wards Co.,* 761 F.2d at 120.

*B. Whether plaintiff must exhaust the dispute mechanisms set forth in the pension plan before bringing this suit.*

■ Defendant relies on interpretation of the Plan in support of its second basis for summary judgment, as well. Again, the court is guided by the principle that summary judgment should be denied when the contractual term giving rise to the motion is susceptible to at least two fairly reasonable interpretations. *Wards Co.,* 761 F.2d at 120; *Schering Corp.,* 712 F.2d at 9; *Heyman,* 524 F.2d at 1220.

■ The provision in question states:
In the event that a request (claim) by a Participant, Beneficiary or other Payee for a benefit under the Plan is wholly or partially denied, the Board of Trustees, within 30 days of such denial, shall give written notice to such Participant, Beneficiary or Payee of the denial of such claim setting forth the reasons for such denial. The Participant, Beneficiary or other Payee may request a review of such denial by filing a written notice with the Board of Trustees within 60 days of such denial. The Board of Trustees shall make its determination on review of the claim denial and furnish its written decision to the Participant, Beneficiary or Payee within 60 days after receipt of the request for review. The decision of the Board of Trustees shall be final and conclusive and binding on all persons.

Plan at 44 (section IX: Appeals Procedure).

Defendant urges that, pursuant to the Plan, exhaustion of the internal "appellate" procedure is a prerequisite to bringing suit under the Plan. Since plaintiff has not satisfied those procedures, defendant concludes that plaintiff cannot maintain this action, and therefore summary judgment is warranted.

The operative word in this contractual provision is "may": "[t]he Participant, Beneficiary or other Payee *may* request a review of such denial...." *Id.* (emphasis added). Noticeably absent from this provision is a *requirement* that plaintiff exhaust the internal appellate mechanism before initiating an action for denial of a claim. The word "may" reasonably suggests that plaintiff is permitted, but not required, to participate in the Fund's appel-

---

4. Even if the Plan Summary were binding, it does not fully support defendant's purported writing requirement. This is because the Plan Summary does not definitively mandate written application. Rather, the Summary requests that applicants for benefits "please follow" the procedures set forth therein. *See* Plan Summary at 40. If the writing requirement were mandato-

ry, the Summary's authors would have stated so, as they did in other portions of the Summary. The court cannot conclusively rule that the Plan Summary mandates written application for pension benefits. As mentioned above, however, this discussion is generally academic because the Plan Summary is not binding, anyway.

late process. If exhaustion of the appellate process were mandatory, then the Plan would (or at least should) state that the Participant "shall" or "must" pursue an appeal as a prerequisite to bringing a suit. The Plan is replete with references to what parties acting thereunder "shall" or "must" do in a given instance; the absence of "shall" from the provision at issue here suggests that the appellate requirement is not mandatory.

Of course, defendant disputes the court's interpretation of the Plan's appellate provision. The court in no manner holds that any one construction of the appellate provision is controlling. Rather, the court merely finds that the provision is ambiguous, in that it is fairly susceptible to at least two reasonable interpretations.

In light of the Plan's ambiguity with respect to exhaustion of internal appellate procedures, defendant's motion for summary judgment on grounds that plaintiff failed to satisfy the requirements is denied with prejudice. *Cf. Heyman,* 524 F.2d at 1220.

### C. Whether plaintiff's action is time barred

At oral argument, the parties stipulated that plaintiff's cause of action accrued, and the statute of limitations began to run, in April, 1987. The court will not disturb the parties' agreement to this effect. The real dispute between the parties lies in determination of the limitations period to be applied to this case. As the parties are well aware, different statutes of limitations apply to different legal theories. The applicable statute of limitations in this case depends upon the basis of plaintiff's cause of action.

Although plaintiff's complaint and motion papers are devoid of any hint as to the statutory basis for this cause of action,

there can be no doubt that plaintiff commenced this action pursuant to ERISA, 29 U.S.C. §§ 1001–1461. This is because ERISA expressly supersedes any state law "relating to" pension plans. 29 U.S.C. § 1144. The effect of § 1144 is that ERISA provides the exclusive remedy for actions arising out of the administration of a pension plan. *Id.; see Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985) (discussion of ERISA preemption of state law claims); *see generally Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (same).

Moreover, the ERISA subsection under which plaintiff must be proceeding here is codified at 29 U.S.C. § 1132. This is because § 1132(a)(1)(B) provides the only private enforcement mechanism in ERISA for claims seeking recovery of benefits due.[5] *Charter Med. Corp. v. Friese,* 732 F.Supp. 1160, 1163 (N.D.Ga.1989) (citing, *e.g., Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). The applicability of § 1132 is somewhat problematic, however, because § 1132 does not place a time restriction on actions brought pursuant to that section. The statute's silence obviously raises the question of what limitations period, if any, should apply to private ERISA actions.

The parties' disagreement as to the applicable limitations period is understandable, in light of the apparently conflicting law on point. Confusion stems in part from the Second Circuit's decision in *Miles v. New York State Teamsters Conf. Pension and Retirement Fund,* 698 F.2d 593, 598 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). In *Miles,* the court held that New York State's six-year statute of limitations should apply to

---

**5.** 29 U.S.C. § 1132:

    **(a) Persons empowered to bring a civil action**

A civil action may be brought—

    (1) by a participant or beneficiary—

    .    .    .    .    .

    (B) to recover benefits due to him under the terms of his plan, to enforce rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

(emphasis in original).

actions brought under § 1132. The court reasoned, "[since] ERISA does not prescribe a limitations period for actions under § 1132, the controlling limitations period is that specified in the most nearly analogous state limitations period." *Miles*, 698 F.2d at 598 (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980)). In the case of § 1132 actions brought in New York State, the most nearly analogous state limitations period is the six-year period prescribed in CPLR 213. *Id.; Larsen v. NMU Pension Trust*, 902 F.2d 1069, 1073 (2d Cir.1990); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir.1990) (applying New York law). In short, *Miles*'s application of New York's six-year time barr was grounded in the premise that ERISA is without its own limitations period.

Plaintiff understandably urges this court to follow *Miles*, and apply a six-year limitations period to this action. Application of *Miles* to this case, however, is not as simple as it may initially appear. This is because, as stated above, the *Miles* six-year rule was founded on the premise that ERISA is without a limitations period altogether. *See Miles*, 698 F.2d at 598. The fact of the matter is that ERISA *does* prescribe a limitations period for certain, limited actions brought under § 1132. Specifically, defendant argues that the limitations period expressly set forth in 29 U.S.C. § 1113 (West Supp.1991) ("Limitations of actions") should apply. Section 1113 states, in pertinent part:

> No action may be commenced under this subchapter *with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part,* or *with respect to a violation of this part,* after the earlier of ... .
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation....

29 U.S.C. § 1113 (emphasis added).

The existence of § 1113 is especially perplexing when one considers that it was enacted in 1975. That is to say, § 1113 was in existence when the Second Circuit decided *Miles* in 1983, yet the court made no mention of that section in the *Miles* decision. The parties—and this court—are left to wonder which of the seemingly conflicting limitations periods control in this case: the six-year period adopted in *Miles*, or the three-year period set forth in § 1113.

The quoted language emphasized above shows a critical limitation to the time bar set forth in § 1113. Section 1113 applies only those actions which relate to duties and violations of "this part." "This part" refers to Part 4 of ERISA subchapter I, governing "Fiduciary Responsibility." *See* 29 U.S.C. §§ 1101–1114 ("Part 4—Fiduciary Responsibility"). The effect of this restriction is that the three-year time bar set forth in section 1113 applies only to those actions alleging breach of the fiduciary duties codified in ERISA at 29 U.S.C. §§ 1101–1114. *Nolan v. Aetna Life Ins. Co.*, 588 F.Supp. 1375, 1378 (E.D.Mich. 1984); *see Edwards v. Wilkes–Barre Publishing Co. Pension Trust*, 757 F.2d 52, 55 (3d Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985).

The only rational explanation, or reconciliation, of *Miles* and § 1113 is that § 1113 applies to all claims alleging breach of fiduciary duty and *Miles* applies to all other ERISA claims. Therefore, the court is left to determine whether the claim in the instant case alleges breach of fiduciary duty, or states some other claim cognizable under ERISA. As stated *supra*, plaintiff's complaint provides little guidance in this respect.

Although it provides little guidance as to the basis of plaintiff's claim, the complaint is not completely devoid of insight on the purported grounds of recovery. To the extent that the complaint alleges that defendant's breached its duty to pay funds due to an erroneous interpretation of the Plan, plaintiff's cause of action is notably similar to the claim asserted by the plaintiffs in *Miles*. In *Miles*, plaintiffs brought suit under § 1132, alleging that the defendant fiduciary's interpretation of the pension plan was arbitrary and capricious, in that it wrongfully deprived plaintiffs of

benefits owed under the plan. The Second Circuit ruled that the action was brought under § 1132, and that New York's six-year statute of limitations controlled. The court made no mention whatsoever of the limitations period governing breach of fiduciary duties, as set forth in § 1113.

Likewise, plaintiff herein alleges that defendant wrongfully denied him benefits owed under the Plan. In response, defendants contend that their interpretation of the Plan is such that plaintiff was not entitled to benefits from 1983–1987, due to his improper application. In other words, this action, like *Miles*, turns on whether defendants properly interpreted the Plan when they decided to deny benefits to the plaintiff. Since this litigation centers on whether defendants properly interpreted the Plan, this case is in line with the situation addressed in *Miles*.

Defendant argues that the § 1113 limitations period should control because plaintiff essentially alleges that defendant breached its fiduciary duty by not paying funds as purportedly required by the Plan. *See* 29 U.S.C. § 1104(a)(1)(D) (West Supp. 1991). Yet, as is apparent from *Miles*, defendant's refusal to pay funds under a plan does not by itself constitute a breach of fiduciary duty for purposes of applying § 1113. After all, the defendant in *Miles* refused to pay funds as allegedly required by the plan, yet the court did *not* employ the § 1113 statute of limitations in that case. *Miles*, 698 F.2d at 597–98. Under defendant's reading of § 1113, any alleged failure to distribute funds under a plan would constitute a claim for breach of fiduciary duty. *Miles* indicates that this simply is not the case.

The fact remains that plaintiff has not alleged a breach of fiduciary duty in his complaint, and has not actively pursued that theory through his papers. To the contrary, plaintiff frequently refers to defendant's "arbitrary and capricious" interpretation of the Plan, thus mirroring the claim pursued by the plaintiffs in *Miles*. *See* Pl.Mem. *passim.* Plaintiff simply alleges that he is owed money under the Plan, and that defendant has refused to

pay him. This is not automatically paramount to an allegation of breach of fiduciary duty. *Cf. Miles*, 698 F.2d at 598.

While the facts giving rise to the claims are obviously different, the causes of action asserted in this case and in *Miles* are, for all relevant purposes, the same. Therefore, this court is compelled to rule that the limitations period set forth in *Miles* governs this case, as well. Applying the six-year statute of limitations set forth in CPLR 213 to this complaint, which was filed in October, 1990, the court finds that plaintiff's claim is timely. Accordingly, defendant's motion for summary judgment based upon the statute of limitations is denied.

### III. PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that summary judgment is warranted here because defendant acted arbitrarily and capriciously in denying plaintiff's demand for pension benefits.

In light of the foregoing discussion, there is little need to discuss plaintiff's arguments in any detail. There exist genuine issues of material fact as to whether plaintiff properly applied for pension benefits before 1987. For example, there is some dispute as to whether plaintiff's 1983 verbal communication with the defendant constituted a formal application for benefits, as opposed to mere requests for information. Also, as discussed extensively *supra*, there remains a factual dispute as to whether the ambiguous provisions of the Plan require application for pension benefits to be in writing. In sum, the court cannot conclude as matter of law that plaintiff, based on his alleged communications with defendant, was entitled to pension benefits in 1983. Accordingly, plaintiff's motion for summary judgment is denied with prejudice. *See* Fed.R.Civ.P. 56(c).

### IV. CONCLUSION

Defendant's motion for summary judgment is denied with prejudice. Plaintiff's

cross-motion for summary judgment is denied with prejudice.

IT IS SO ORDERED.